UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| **FREDDIE L. WALKER** | **CIVIL ACTION NO. 08-1020-P** |
| **VERSUS** | **JUDGE HICKS** |
| **CHIEF WHITEHORN, ET AL.** | **MAGISTRATE JUDGE HORNSBY** |

### REPORT AND RECOMMENDATION

In accordance with the standing order of this court, this matter was referred to the undersigned Magistrate Judge for review, report and recommendation.

### STATEMENT OF CLAIM

Before the Court is a civil rights complaint filed in forma pauperis by pro se plaintiff Freddie L. Walker ("Plaintiff"), pursuant to 42 U.S.C. § 1983. This complaint was received and filed in this Court on July 14, 2008. Plaintiff claims his civil rights were violated by prison officials while incarcerated at the Shreveport City Jail in Shreveport, Louisiana. He names numerous defendants including Chief Whitehorn, the Shreveport Police Department Contractors, the Shreveport Police Department Subcontractors, the Shreveport Police Department Employees, Captain John Doe, Commander Parrie, Commander John Doe, Officer Hector, Officer Owens, Officer Bryant, Officer Hawkins, Officer McCary, Officer Staten, Officer Jones, Officer Eavens, Officer Anderson, Lt. Adams, Orkin Anti-Pest, Jean Doe, SCJABL Management, Officer Smith, Northworther Coman, Officer Williams, Lt. Taylor, Lt. Chambers, Officer Morrieson, Officer Brown, Lt. Deal, Officer Mayshak,

Officer Green, Officer Williams, Officer Adams, Officer Payton, Officer Jones, Dr. John Doe, Mrs. O'Neal, Jane Doe, and the Shreveport City Jail Banking Staff.

Plaintiff claims that on June 7, 2008, he was arrested and booked into the Shreveport City Jail for a parole violation and a charge of domestic violence. He claims that while incarcerated at the Shreveport City Jail from June 7, 2008 until July 10, 2008, he was served inadequate and non-nutritious meals. He claims the food was cold and undercooked. He claims his first cold meal consisted of chilly mac, cornbread, black-eye peas, and cake.

Plaintiff claims that on June 9, 2008, he was placed on the doctor call out because of his pre-existing medical conditions. He claims he was seen by the doctor and given medication for heart problems and high blood pressure. Plaintiff claims he was given the wrong medication and his blood pressure remained elevated. He claims he was charged $15.00 for the visit. He claims the Shreveport City Jail does not have an in house medical staff or emergency response team. He claims 911 must be called in the case of an emergency.

Plaintiff claims the Shreveport City Jail has it own rules which are not listed in a rule book or set out in a disciplinary procedure. He claims inmates are punished and placed in lock-down without disciplinary proceedings. He claims that if one inmate breaks a house rule or asks a question, the entire unit is punished and placed on lock-down. He claims there is no administrative remedy procedure.

Plaintiff claims that on June 10, 2008, he was placed in lock-down segregation for

more than 24 hours because he asked an officer about money which was deposited into his account by his employer. He claims his requests to speak to a higher ranking officer were denied. Plaintiff claims he was punished without due process.

Plaintiff claims the administration holds inmate funds beyond the allowed 72-hour period. He claims the administration is holding his $20.00 and refuses to release it to him.

Plaintiff claims the prices charged in the jail canteen are outrageous. He claims inmates are not allowed to watch the news.

Plaintiff claims that on July 3, 2008, he was bitten by a spider on his left leg. He claims he informed the officers of the bite when he noticed it. Plaintiff claims that on July 4, 2008, he informed the officers that the bite was getting bigger. He admits he was given Tylenol for his pain and swelling. He claims that on July 7 or 8, 2008, he was finally examined by a doctor. He claims he informed the doctor that he had no more blood pressure medication and was not feeling well. He claims he received no medication or treatment for his high blood pressure. Plaintiff claims that on July 9, 2008, his blood pressure was elevated and he felt like he was going to pass out. He claims his leg was still swollen and he was still in pain.

Plaintiff claims that on July 8, 2008, he was placed in lock-down segregation because he informed officers that he was involved in a disagreement with another inmate over cookies. He claims he was trying to prevent a fight. He claims he remained in segregation until he was transferred to Caddo Correctional Center on July 10, 2008, without ever having a hearing.

Plaintiff claims that on July 10, 2008, he was transferred to Caddo Correctional Center. He claims that after he was processed at Caddo Correctional Center, he was transported to LSU Medical Center. He claims his blood pressure was 230/190 and he had a high fever and that both were higher than a person could survive. He claims a doctor had to drain his spider bite and keep his wound open until July 25, 2008. He claims he was hospitalized for one day and remained in the infirmary for five days.

Accordingly, Plaintiff seeks punitive, compensatory and nominal damages, injunctive relief, and court costs and interest.

## LAW AND ANALYSIS

**Inadequate Food**

Plaintiff claims that while incarcerated at the Shreveport City Jail from June 7, 2008, until July 10, 2008, he was served cold, undercooked food that was inadequate and non-nutritious. The Constitution mandates that detainees and inmates be provided " 'well-balanced meal[s], containing sufficient nutritional value to preserve health.'" Green v. Ferrell, 801 F.2d 765, 770 (5th Cir.1986) (quoting Smith v. Sullivan, 553 F.2d 373, 380 (5th Cir. 1977)) (footnote omitted); See also Eason v. Thaler, 73 F.3d 1322, 1327 (5th Cir.1996) (per curiam) ("To comply with the Constitution, inmates must receive 'reasonably adequate' food.").

"The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the 'minimal civilized measure of life's necessities.'" Talib v. Gilley, 138 F.3d 211, 214, n. 3 (5th Cir.1998)(quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321,

2324, 115 L.Ed.2d 271 (1991)) (internal quotations omitted). "Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation ." Id.

Here, Plaintiff does not allege that he was denied anything close to the "minimal civilized measure of life's necessities." Id. Nor did he allege any specific physical harm resulting from the Defendants' alleged dietary failures. He did not claim that he was at all undernourished, or that he lost weight, or suffered any other adverse physical effects as a result of the complained of diet. Plaintiff offered only conclusory allegations that the prison diet was inappropriate, and that is insufficient to state a claim for which relief might be granted. Accordingly, Plaintiff's claims should be dismissed with prejudice as frivolous.

**Medical Care**

Plaintiff claims he was denied adequate medical care for his pre-existing medical conditions. He claims the doctor prescribed the wrong medication and his blood pressure remained elevated. Plaintiff claims that the Shreveport City Jail does not have an in house medical staff or emergency response team and that 911 must be called in the case of an emergency. Plaintiff claims he was denied blood pressure medication for two days. Plaintiff claims that he did not see a doctor for five days regarding a spider bite on his leg even though he told many prison officials about the bite.

Plaintiff filed this claim pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for persons "deprived of any rights, privileges or immunities" by a person acting under color of state law. The particular right protected under 42 U.S.C. § 1983 in

matters which concern alleged denial of or inadequate medical care is the Eighth Amendment prohibition against cruel and unusual punishment.

The lack of proper inmate medical care rises to the level of a constitutional deprivation under the Eighth Amendment of the United States Constitution only if the evidence shows that the prison officials showed "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976); See also Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978 (1994). It is only deliberate indifference, "an unnecessary and wanton infliction of pain" or an act "repugnant to the conscience of mankind," that constitutes conduct proscribed by the Eighth Amendment. Estelle, 429 U.S. at 105-06, 97 S. Ct. at 292; See also Gregg v. Georgia, 428 U.S. 153, 96 S. Ct. 2909 (1976). Further, the plaintiff must establish that the defendants possessed a culpable state of mind. See Wilson v. Seiter, 501 U.S. 294, 297-302, 111 S. Ct. 2321, 2323-27 (1991); Farmer, 511 U.S. at 838-47, 114 S. Ct. at 1979-84. A delay in medical care will violate the Eight Amendment only if the delay is based on deliberate indifference and results in substantial harm. Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993).

In this case, after a thorough review of Plaintiff's complaint, read in a light most favorable to him, the Court finds that the facts alleged do not support a finding of deliberate indifference to serious medical needs. To the contrary, the record demonstrates that Defendants were attentive to the medical needs of Plaintiff. It has been consistently held that an inmate who has been examined by medical personnel fails to set forth a valid showing of deliberate indifference to serious medical needs. Norton v. Dimazana, 122 F.2d

286, 292 (5th Cir. 1997); Callaway v. Smith County, 991 F. Supp. 801, 809 (E.D. Tex. 1998); Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992). Plaintiff admits he was seen by the medical staff on June 9, 2008 for his pre-existing medical conditions and prescribed medications for his heart condition and high blood pressure. Plaintiff admits he was given medication for the pain and swelling caused by the spider bite until he could see the doctor on July 8, 2008. Plaintiff's complaint is devoid of factual allegations that would tend to show Defendants acted with a culpable state of mind or that their actions were "unnecessary and wanton." Furthermore, Plaintiff does not allege that the two day delay in receiving blood pressure medication or the five day delay in receiving additional treatment for his spider bite resulted in any substantial harm.

Plaintiff's allegations, if accepted as true, may amount to a state law claim for negligence, a tort. However, mere negligence, neglect or medical malpractice does not amount to a denial of a constitutional right as these actions on the part of Defendants do not rise to the level of a constitutional tort. See Daniels v. Williams, 474 U.S. 327, 329-30, 106 S. Ct. 662, 664 (1986); Estelle, 429 U.S. at 106, 97 S. Ct. at 292; Lewis v. Woods, 848 F.2d 649, 651 (5th Cir. 1988). The fact that Plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. See Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). Prisoners are not constitutionally entitled to the best medical care that money can buy. See Mayweather v. Foti, 958 F.2d. 91 (5th Cir. 1992). Accordingly, Plaintiff's claims should be dismissed with prejudice as frivolous.

**Medical Fee**

Plaintiff complains that he was charged $15.00 for his June 9, 2008 medical visit. Plaintiff does not have a constitutional right to free medical care. Hutchinson v. Belt, 957 F.Supp. 97 (W.D. Louisiana 1996) (citations omitted). Furthermore, Plaintiff does not allege that he was denied medical treatment because he could not pay the fee. Accordingly, Plaintiff's claim should be dismissed with prejudice as frivolous.

**Segregation**

Plaintiff claims that on June 10, 2008, he was placed in lock-down segregation for more than 24 hours because he asked an officer about his prison account. Plaintiff claims that on July 8, 2008, he was placed in lock-down segregation because he attempted to prevent a fight between himself and another inmate. Plaintiff claims he was placed in lock-down segregation without cause and without a disciplinary hearing. Plaintiff claims he was punished without due process.

In Sandin v. Connor, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court clarified when due process protections attach to the prison disciplinary process. The Supreme Court held that the Due Process Clause of the Fourteenth Amendment does not afford an inmate a protected liberty interest that would entitle the inmate to procedural protections in the disciplinary process when the maximum sanction the inmate could receive does not "present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest" and the duration of the prisoner's original sentence is not affected. Id. 132 L.Ed.2d at 431.

Under the guidance provided by Sandin, the Fifth Circuit has held that as a general rule, only sanctions which result in loss of good time credit or which otherwise directly and adversely affect release will implicate a constitutionally protected liberty interest. Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995). Moreover, in commenting on Sandin, the Fifth Circuit noted that liberty interests which are protected by the Due Process Clause are generally limited to actions which affect the quantity of time rather than the quality of time served by a prisoner. Madison v. Parker, 104 F.3d 765, 767 (5th Cir. 1997) citing Sandin, 115 S.Ct. at 2297.

Plaintiff in the instant case does not allege that the disciplinary action affected the duration of his sentence or that the disciplinary action was atypical of the prison environment. To the contrary, Plaintiff's allegations concern the placement in lock-down segregation which is far from "extraordinary." This court finds that under Sandin, Orellana and Madison, the placement in lock-down segregation for a day or several days does not constitute the type of atypical punishment that presents a significant deprivation which would implicate due process concerns. Accordingly, Plaintiff's claims should be dismissed with prejudice as frivolous.

**Administrative Remedy Procedure**

Plaintiff claims that the Shreveport City Jail does not have an administrative remedy procedure. Inmates do not have a constitutionally protected right to a prison administrative grievance procedure. See Oladipupo v. Austin, et al., 104 F.Supp.2d 626 (W.D. La. 2000); Brown v. Dodson, et al., 863 F. Supp. 284 (W.D. Va.1994); Flick v. Alba, 932 F.2d 728,

729 (8th Cir. 1991). A prison official's failure to comply with a state administrative grievance procedure is not actionable under Section 1983 because a state administrative grievance procedure does not confer any substantive constitutional right upon prison inmates. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988), cert. denied, 488 U.S. 898, 109 S.Ct. 242, 102 L.Ed.2d 231.

Furthermore, state administrative grievance procedures are separate and distinct from state and federal legal procedures. Thus, a prison official's failure to comply with state administrative grievance procedures does not compromise an inmate's right of access to the courts. Flick, supra. Thus, insofar as Plaintiff alleges that the defendants failed to have and/or comply with a prison administrative grievance procedure, those allegations, standing alone, do not provide an arguable basis for recovery under Section 1983. Accordingly, Plaintiff's claim should be dismissed with prejudice as frivolous.

**Property**

Plaintiff claims that the administration is holding his $20.00 and refuses to release it to him. Plaintiff filed this claim pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for persons "deprived of any rights, privileges or immunities secured by the Constitution or laws of the United States" by a person acting under color of state law. Accordingly, the initial inquiry and threshold concern of the reviewing court is whether Plaintiff's constitutional rights have been violated. See Parratt v. Taylor, 451 U.S. 527, 107 S. Ct. 1908 (1981).

The property of which Plaintiff was allegedly deprived can constitute "property" within the meaning of the Due Process Clause of the Fourteenth Amendment and its loss is worthy of redress if the loss implicates constitutional rights. See id. at 542, 107 S. Ct. at 1916. However, the Fourteenth Amendment is not a font of tort law to be superimposed upon whatever systems may already be administered by the States. See Baker v. McCollan, 433 U.S. 137, 99 S. Ct. 2689 (1979). A constitutional deprivation of property without due process of law, as differentiated from a state tort law claim, must be intentional and plaintiff must allege specific facts which support such a conclusion.

Absent an intentional deprivation of property where the charge only supports a negligent failure by defendants, a constitutional deprivation does not lie. "[T]he Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty or property." Daniels v. Williams, 474 U.S. 327, 328, 106 S. Ct. 662, 663 (1986). Moreover, even in instances where intentional deprivation occurs where an adequate state post-deprivation remedy is available, the Due Process Clause is not implicated. See Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 3204 (1984), on remand, 744 F.2d 22 (4th Cir. 1984); Marshall v. Norwood, 741 F.2d 761, 764 (5th Cir. 1984). Mere assertions of intentionality are not enough in the absence of specific facts supporting the assertions and "even if the taking were intentional, the state could afford the [plaintiff] due process by providing a post-deprivation remedy for the redress of the unforeseeable, unauthorized injury... alleged." Lewis v. Woods, 848 F.2d 649, 652 (5th Cir. 1988). Louisiana law provides Plaintiff the opportunity to seek redress for his loss, whether

intentional or negligent. See La. Civ. Code art. 2315. Accordingly, Plaintiff has failed to state a claim cognizable under Section 1983.

**Denial of Television**

Plaintiff claims that inmates were not allowed to watch the news while he was detained at the Shreveport City Jail. "[T]he basic purpose of a § 1983 damages award should be to compensate persons for injuries caused by the deprivation of constitutional rights." Carey v. Piphus, 435 U.S. 247, 254, 98 S.Ct. 1042, 1047, 55 L.Ed.2d 252 (1978). Thus, no compensatory damages may be awarded in a § 1983 suit absent proof of actual injury. Id., at 264, 98 S.Ct., at 1052.

Prisoners have no constitutional right to watch television because watching television is not one of life's necessities nor is it a basic human need. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); McDonald v. Steward, 132 F.3d 225, 231 (5th Cir.1998); Woods v. Edwards, 51 F.3d 577, 581 (5th Cir.1995). Furthermore, Plaintiff has not alleged that he was denied access to other forms of news media including newspapers and radio broadcasts. Accordingly, Plaintiff's claim should be dismissed with prejudice as frivolous.

**Canteen Prices**

Plaintiff complains that the Shreveport City Jail canteen prices were outrageous. The law is clear that inmates have no constitutionally protected interest in purchasing goods through the prison commissary at the cheapest price possible. See Grice v. Blanco, 2007 WL 2908826 (W.D. La. 7/18/07) citing Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct.

2963, 41 L.Ed.2d 935 (1974) ("[T]he fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed."); French v. Butterworth, 614 F.2d 23, 25 (1 st Cir.1980)(holding "there is simply no legal basis for a demand that inmates be offered items for purchase at or near cost"); McCall v. Keefe Supply Co., 71 Fed.Appx. 779, 780 (10th Cir.2003) (stating that an inmate's claim that prison commissary charged "outrageous" prices for goods purchased through the prison commissary failed to state a constitutional claim). Accordingly, Plaintiff's claim should be dismissed with prejudice as frivolous.

## CONCLUSION

Because Plaintiff filed this proceeding in forma pauperis ("IFP"), if this Court finds Plaintiff's complaint to be frivolous, it may dismiss the complaint as such at any time, before or after service of process, and before or after answers have been filed. See 28 U.S.C. § 1915(e); Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). District courts are vested with extremely broad discretion in making a determination of whether an IFP proceeding is frivolous and may dismiss a claim as frivolous if the IFP complaint lacks an arguable basis either in law or in fact. See Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995); Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993); Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

For the reasons heretofore stated, it is recommended that Plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915(e).

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objection within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and that were not objected to by the aforementioned party. See Douglas v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 1st day of August, 2011.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE